IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JACKENSON CONSTANT,                    )
                                       )
        Petitioner,                    )
                                       )        Civil Action No. 1:25-cv-1916 (RDA/WEF)
        v.                             )
                                       )
PAUL PERRY, *et al.*,                  )
                                       )
        Respondents.                   )

## ORDER

This matter comes before the Court on Respondents' Emergency Motion to Stay & to Re-Open Briefing. Dkt. 19. The parties have now submitted their supplemental briefs. For the reasons set forth below, the Court GRANTS the Petition.

## I.    BACKGROUND

Petitioner Jackenson Constant is a citizen of Haiti. Dkt. 1 ¶ 1. He left Haiti in 2000 and came to the United States, as a minor, after his family's home was burned down. *Id.* ¶¶ 13-14. Petitioner asserts that, in the United States, an abusive guardian kicked Petitioner out of his home, that he became homeless, that he has some mental health struggles, and that he is illiterate. *Id.* ¶ 14. Petitioner asserts that he was later arrested and convicted in federal court, his sentence was reduced in 2023, and he was transferred to Immigrations and Customs Enforcement ("ICE") custody in December 2023. *Id.*

After Petitioner was transferred to ICE custody, Petitioner was found incompetent to represent himself and was appointed counsel. *Id.* ¶ 17. On February 25, 2025, Petitioner was granted relief under the Convention Against Torture ("CAT"). *Id.* That is, he was granted deferral

based on his risk of torture in Haiti. *Id.* The Department of Homeland Security ("DHS") waived appeal and the decision became administratively final. *Id.*

On May 14, 2025, Petitioner requested that Petitioner be released. *Id.* ¶ 18. On May 29, 2025, the request was denied. *Id.* After that time, no one at ICE gave Petitioner any sense of next steps or indicated that third-country removal was being pursued. *Id.* ¶ 19.

On October 31, 2025, Petitioner filed his Petition for Writ of Habeas Corpus in this Court. Dkt. 1. On November 4, 2025, the Court issued an Order directing Respondents to respond and scheduled a hearing on the Petition. Dkt. 4.

On November 12, 2025, Respondents appeared and filed their Opposition to the Petition. Dkt. 7. In their Opposition, Respondents contended that Petitioner was being detained under 8 U.S.C. § 1231 pending his removal to Mexico. *Id.* at 2. Respondents noted that the same day that they filed their Opposition – that is November 12, 2025 – they had provided Petitioner with notice that he would be removed to Mexico. Dkt. 7-5. Thus, Respondents argued that Petitioner would be removed in the reasonably foreseeable future and that there was no constitutional issue with Petitioner's continued detention pending such foreseeable removal under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Dkt. 7 at 2.

On November 19, 2025, Petitioner filed his Reply. Dkt. 8. Petitioner noted that Respondents conceded that Petitioner had been detained for over nine months after his removal order became administratively final. *Id.* at 1. Petitioner also noted that the Opposition contained "zero evidence of any actual request or communications with Mexico." *Id.*

On December 3, 2025, the Court heard oral argument from the parties primarily regarding whether removal to Mexico was reasonably foreseeable and whether Mexico would accept

2

On December 16, 2025, Petitioner filed his second notice. Dkt. 16. Petitioner again noted that Respondents had not provided any evidence that Mexico had agreed to receive Petitioner. *Id.* at 2. Petitioner further noted that the Motion to Reopen was for the "specific, limited purpose of seeking fear-based/humanitarian relief with respect to Mexico" and that the IJ confirmed that "Respondent is only eligible to apply for deferral of removal to Mexico under the Convention Against Torture." *Id.* at 2 n.1. Thus, Petitioner argued that "the final order and grant of protection under the Convention Against Torture ('CAT') as to Mr. Constant's native country of Haiti remains final and is not being relitigated." *Id.* at 2. Petitioner asserts that he "began these habeas proceedings with an order of removal that was deferred due to the risk the would be tortured if removed, and he will likely conclude his limited, reopened proceedings in the same way" and notes that he has been in ICE custody for 22 months. *Id.* at 5. He argues that his Petition cannot be moot, when he is still detained and where his Petition challenged that detention. *Id.* Petitioner notes that there are two possible outcomes to his immigration proceedings: (i) his CAT motion is denied, in which case Respondents still do not know whether Mexico will take him; or (ii) his CAT motion is granted, in which case Respondents have not suggested that his removal would be reasonably foreseeable. *Id.* Petitioner argues that denying his Petition in these circumstances would result in "gamesmanship" by Respondents "picking third country after third country." *Id.* at 7.

On February 2, 2026, this Court granted the Petition. Dkt. 17. In the Order, the Court specifically noted Respondents' failure to adequately respond to this Court's prior order. Dkt. 17.

On February 4, 2026, Respondents filed an Emergency Motion to Stay and to Re-Open Briefing. Dkt. 19. In the Motion, Respondents noted that their footnote in the December 9, 2025 notice asserted that the Petition would be moot if the motion to reopen was granted because

4

Petitioner. Dkt. 11. That same day, the Court issued an Order directing Respondents to produce written notice on or before December 17, 2025, regarding "whether Mexico has agreed to accept Petitioner from removal." Dkt. 12. The Court further warned Respondents that, "unless its written notice confirms that Mexico has agreed to receive Petitioner for removal and provides assurances that Petitioner will be promptly removed to Mexico and thereby released from immigration detention, the Court may grant the petition." *Id.*

On December 9, 2025, Respondents reported that "Mexico has not yet accepted Petitioner and will decide whether or not to accept Petitioner once Petitioner is transferred to [a] removal-staging facility and is presented to Mexican officials." Dkt. 13. Respondents further noted that, on December 3, 2025, an Immigration Judge ("IJ") granted a request for a stay of removal until the IJ resolved Petitioner's motion to reopen. *Id.* In a footnote, Respondents suggested that, if the motion to reopen was granted, "Petitioner's detention would be governed by 8 U.S.C. § 1225 or § 1226, which would render the instant petition moot." *Id.* at 2 n.1.

The next day, Petitioner filed his own notice. Dkt. 14. Petitioner noted that "Respondents do not claim to have taken any steps whatsoever to contact Mexico" and that, instead, Respondents confirmed the "continued status quo" of Petitioner's detention. *Id.* Petitioner argued that the IJ's "recent stay of removal is irrelevant to ICE's ability to advance or even initiate diplomatic communications with Mexico." *Id.*

On December 12, 2025, Respondents filed a second notice. Dkt. 15. Respondents again repeated that "Mexico has not yet accepted Petitioner." *Id.* Respondents also noted that the IJ had granted Petitioner's motion to reopen and briefly noted: (i) that Petitioner is no longer in the removal period; (ii) that Petitioner is now in removal proceedings; and (iii) that the Petition is moot. *Id.*

3

Petitioner would then be detained pursuant to Section 1225 *or* Section 1226. *Id.* at 2. They also noted that their December 12, 2025 notice briefly asserted that the Petition was moot. *Id.* at 3. Respondents then suggested that, because the Court did not mention the brief references to mootness in a footnote and a brief sentence in their notices, the Court did not consider those statements. *Id.* Respondents requested that the Court stay Petitioner's release and reopen briefing on the issue of mootness. *Id.* The proposed Order suggested that Respondents sought two weeks to provide their new brief. Dkt. 19-1.[1]

That same day, the Court granted-in-part and denied-in-part the motion. Dkt. 21. The Court stayed the effect of its prior Order and set a briefing schedule at a more expeditious pace than suggested by Respondents. *Id.*

On February 6, 2026, Respondents filed their supplemental brief. Dkt. 23. Respondents first argue that Petitioner concedes that he is no longer detained pursuant to Section 1231. *Id.* at 2. Respondents next argue that Petitioner's detention is not indefinite under *Demore v. Kim*, 538 U.S. 510 (2003), but acknowledge that *Demore* was decided at a time when the processing of removal claims was 47 days and that now it is "significantly longer." *Id.* at 3-6 & n.1.

On February 9, 2026, Petitioner filed his own supplemental brief. Dkt. 24. Petitioner disputes that he has conceded that he is not detained pursuant to Section 1231. *Id.* at 3. Petitioner argues that "he remains subject to an administratively final order of removal." *Id.* Petitioner argues that the withholding only proceedings that have been reopened before the IJ do not undercut the finality of the removal order and Petitioner's detention continues to be under Section 1231. *Id.*

---

[1] So that there can be no question that the Court closely reads the filings before it, the Court notes that the Motion makes reference to Petitioner's entitlement to "respond to both this motion and the attached memorandum." Dkt. 19 at 5. But there is no attached memorandum and no such memorandum was filed.

Petitioner further argues that he is entitled to release under *Zadvydas*. *Id.* at 7-10. Finally, Petitioner argues that he is not detained under Section 1225 or 1226. *Id.* at 10-11.

## II. LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "[T]he heart of habeas corpus," the Supreme Court has noted, is to allow a detainee to "challeng[e] the fact or duration of his physical confinement," and to "seek[] immediate release or a speedier release from that confinement." *Preiswer v. Rodriguez*, 411 U.S. 475, 498 (1973).

## III. DISCUSSION

At the threshold, the Court will address Respondents' argument that this case is moot because Petitioner is no longer detained pursuant to Section 1231. The Court will then address Petitioner's detention and whether he is appropriately released.

### A.    Mootness

The Petition challenged Petitioner's detention pursuant to 8 U.S.C. § 1231(a)(6). Dkt. 1. Although Respondents apparently agree that Petitioner was originally detained pursuant to Section 1231, they now argue that he is detained pursuant to Section 1226(c) and that the Petition is moot. Dkt. 23.

A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). On the other hand, a "case that would otherwise be moot is not so if the underlying dispute is 'capable of repetition, yet evading review.'" *Stop Reckless Economic Instability Caused by Democrats v. Fed. Election Com'n*, 814 F.3d 221, 229 (4th Cir. 2016). Whether this case is moot rests, in the first instance, on a determination regarding under what statute Petitioner is detained.

Section 1231 requires detention of aliens who are subject to an administratively final order of removal. See 8 U.S.C. § 1231(a). In the immigration context, a "final order of removal" refers to an order "concluding that an alien is deportable or ordering deportation." *Nasrallah v. Barr*, 590 U.S. 573, 581 (2020). As the Supreme Court has recognized: "A CAT order is not itself a final order of removal because it is not an order 'concluding that the alien is deportable or ordering deportation.' As the Government acknowledges, a CAT order does not disturb the final order of removal." *Id.* at 582. More recently, the Supreme Court has again emphasized that final orders of removal are separate from withholding-only proceedings, including requests for CAT relief. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 531 (2025) ("There are two paths for seeking withholding of removal. . . . Second, the alien may seek withholding under regulations implementing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment . . . ."). In *Guzman Chavez*, the Supreme Court reiterated that "the finality of the order of removal does not depend in any way on the outcome of withholding-only proceedings" and therefore held that Section 1231 governed the detention claims at issue there. *Id.* at 539, 542 ("In short, the statutory text makes clear that § 1231, not § 1226, governs respondents' detention . . . ."). Indeed, this principle has been litigated numerous times before the Supreme Court, and the Supreme Court has repeatedly held that withholding proceedings, like those under CAT, do not impact the finality

7

of a detention order or shift detention away from Section 1231. *See also Riley v. Bondi*, 606 U.S. 259, 269 (2025) ("In *Guzman Chavez*, the [noncitizens'] removal had been ordered by DHS, and that determination was not being challenged, but proceedings in which they were seeking withholding of removal were still in progress."); *INS v. Aguirre-Aguirre*, 526 U.S. 415, 419 (1999) ("[W]ithholding only bars deporting a[] [noncitizen] to *a particular country or countries*." (emphasis in original)).

Here, Petitioner is subject to a final order of removal and does not challenge that he is deportable. The re-opened immigration proceedings make clear that Petitioner "is *only* eligible to apply for deferral of removal to Mexico under the Convention Against Torture." Dkt. 15-1 (emphasis added). Under *Nasrallah* and *Guzman Chavez*, whose holdings Respondents do not acknowledge,[2] the current immigration proceedings do not impact the finality of removal, as they merely constitute withholding proceedings. In their initial Opposition, Respondents appeared to concede that withholding proceedings – like those currently before the IJ – do not affect the finality of the order of removal. *See* Dkt. 7 at 5 ("CAT relief does *not* 'alter the authority of the Service to detain an alien whose removal has been deferred under this section and who is otherwise subject to detention.'" (emphasis in original)); *id.* at 13 (recognizing that "ongoing withholding-only proceedings do not, standing alone, cast doubt on the foreseeability of an alien's removal in the future"). Thus, because Petitioner has a final order of removal, he is subject to detention under Section 1231 – not Section 1226.

---

[2] In their supplemental brief, Respondents cite *Guzman Chavez* only tangentially and not for the proposition discussed above. *See* Dkt. 23 at 3 ("As background, 8 U.S.C. § 1226(c) mandates detention of noncitizens convicted of specific criminal offenses listed in 8 U.S.C. § 1227 or who are inadmissible under certain provisions in 8 U.S.C. § 1182. *See generally Guzman Chavez v. Hott*, 940 F.3d 867, 873 (4th Cir. 2019) ("*Guzman Chavez I*"), *rev'd in other part by Johnson v. Guzman Chavez* ("*Guzman Chavez II*"), 594 U.S. 523 (2021); . . . .").

Although this situation may previously have been considered unusual, other courts have recently addressed similar circumstances to those presented here – particularly where a petitioner has obtained a CAT order with respect to their country of origin, the Government seeks to remove the petitioner to Mexico, and the petitioner seeks CAT protection with respect to Mexico as well. For example, in *L.R. v. Noem*, the petitioner had CAT protection from removal to El Salvador, when the government attempted to remove him to Mexico, and the petitioner filed both a habeas petition challenging his detention pursuant to Section 1231 and sought to preclude his removal to Mexico under CAT. 2026 WL 161605, at *3-*4 (D. Nev. Jan. 21, 2026). Applying *Guzman Chavez*, the *L.R.* Court held that the petitioner was detained pursuant to Section 1231 and then applied *Zadvydas* to release the petitioner. *Id.* at *12-*13.

Thus, applying this breadth of caselaw from the Supreme Court and the apt analysis in like circumstances from the *L.R.* Court, this Court finds that Petitioner is detained pursuant to Section 1231. Because the Petition was premised on Section 1231, the Petition is not moot.[3]

---

[3] Even if Respondents were successful in convincing the Court to ignore the breadth of Supreme Court authority regarding the impact of withholding-only proceedings to find that Petitioner is detained pursuant to Section 1226(c), the Court would still not find the Petition moot because it would be capable of repetition yet evading judicial review. That is because, as discussed further *infra* there has already been a due process violation under *Zadvydas*, and as Petitioner points out, the results of the withholding proceedings are likely to return Petitioner to the status quo of detention under Section 1231. That is, either his request for CAT protection for Mexico will be granted and Respondents will have to proffer a new third country to accept Petitioner (of which they have suggested none to date) or the request for CAT protection will be denied and Respondents will again attempt to remove Petitioner to Mexico (of which they took no steps to accomplish, even following a hearing and the issuance of the December 3, 2025 Order). In either event, Petitioner would again be detained under Section 1231 – after 22 months – with no reasonably foreseeable prospect of removal.

B.      Detention under Section 1231

Having determined that Petitioner is detained pursuant to Section 1231 and has been detained since December 2023 and detained under Section 1231 since February 2025, the Court must now address the original basis for the Court's Order releasing Petitioner: *Zadvydas*.  In *Zadvydas*, the Supreme Court held that, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699-700. Specifically, the Supreme Court held that a non-citizen may be detained only for "a period reasonably necessary" to bring about that non-citizen's removal from the United States. *Zadvydas*, 533 U.S. at 689). The Supreme Court also held that six months is a presumptively reasonable period of time to deport a non-citizen. *See Zadvydas*, 533 U.S. at 700-01.

Here, in the period between February 2025 and November 2025 when this Court issued its habeas scheduling order, it appears that Respondents took no steps to remove Petitioner to a third country.  Indeed, it was only on November 12, 2025 – the same day that Respondents' Opposition to the Petition was due – that Respondents even identified a third country.  Dkt. 7-5.  In the time between the identification of Mexico as a third country and the hearing, Respondents apparently took no steps to effectuate or determine if a removal to Mexico was possible.  On December 3, 2025, the Court directed Respondents to take such steps and, as evidenced by their notices, they did nothing to determine whether Mexico would accept Petitioner. Dkts. 13, 15.  Indeed, the only thing that Respondents have determined is that they *do not know* whether Mexico will accept Petitioner. Dkt. 15 (noting "Mexico has not yet accepted Petitioner and will decide whether or not to accept Petitioner once Petitioner is transferred").  This is in contravention of this Court's December 3, 2025 Order which directed Respondents to find out. Dkt. 12.  Thus, the record before the Court is that after almost a year of detention under Section 1231, Respondents have taken no

10

steps to remove Petitioner and have not taken any steps to find out whether he is removable to the third country Respondents have identified. This does not satisfy due process under *Zadvydas*.

Furthermore, Petitioners have identified evidence that Mexico will not take Petitioner. Dkts. 24-1, 24-2. Other courts, when presented with similar evidence regarding nonconsensual removal to Mexico have held that it supports Petitioner's argument that removal is not reasonably foreseeable. *See Rea-Hernandez v. Bondi*, 2026 WL 322874, at *5 (W.D. Wash. Feb. 6, 2026) (noting that Mexico is only willing to accept individuals for third country removal if they are willing); *Jumel Coke v. Bondi*, 2026 WL 221514, at *2 (W.D. Wash. Jan. 28, 2026) (same); *Suarez-Ramirez v. Bondi*, 2026 WL 115020, at *2 (D. Nev. Jan 15, 2026) (same); *Pena-Gil v. Lyons*, 2025 WL 3268333, at *1, *3, *4 (D. Colo. Nov. 24, 2025) (granting habeas relief under *Zadvydas* when ICE repeatedly failed to "persuade" the petitioner to go "voluntarily" to Mexico and then cancelled the deportations when he refused). Although Respondents argue that Petitioner faces only the "ordinary delays associated with processing an alien's claims for withholding," *Euceda v. Evans*, 2017 WL 1534194, at *5 (E.D. Va. Apr. 24, 2017), those are not the circumstances faced here where Respondents have taken no steps to effectuate removal or to even determine whether removal is possible and where Petitioner has provided evidence suggesting that such removal is not possible. Another district judge in this District also granted a petitioner release under *Zadvydas* in similar circumstances. *See Divafkan v. Lyons*, No. 25-cv-2242, Order at 6, Dkt 11 (E.D. Va. Jan. 20, 2026) ("In short, this case does not involve delays related to pending withholding-only proceedings or ministerial or administrative processing relative to countries who have consented to accept the Petitioner, but rather diplomatic difficulties in obtaining third-country consent for removal from those countries identified as possible substitutes for Petitioner's home country with no evidence of progress in locating other substitute countries."). Accordingly, as this

Court previously held, Respondents have failed to adequately respond to this Court's December 3, 2025 Order or to demonstrate that Petitioner will be removed to Mexico (or any other third country) in the reasonably foreseeable future and the Petition should and will be granted. Dkt. 17.

## IV.   CONCLUSION

Based on the foregoing, it is hereby ORDERED that the Petition (Dkt. 1) is GRANTED; and it is

FURTHER ORDERED that Petitioner be RELEASED from custody no later than Friday, February 13, 2026, at 12:00 p.m. with all his personal property; and it is

FURTHER ORDERED that, within 24 hours of Petitioner's arrival at the fixed address he has previously identified, Petitioner submit a change of address to the local ICE office and to Respondents; and it is

FURTHER ORDERED that Respondents are DIRECTED to file a notice with the Court confirming Petitioner's Release.

IT IS SO ORDERED.

Alexandria, Virginia
February  10 , 2026

/s/
Rossie D. Alston, Jr.
United States District Judge

12